**Malydia WILSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0502–CR–67.

Court of Appeals of Indiana.

Oct. 18, 2005.

Transfer Denied Dec. 1, 2005.

Ruth Johnson, Marion County Public Defender Agency, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Malydia Wilson ("Wilson") appeals her convictions for aggravated battery as a Class B felony,[1] battery as a Class D felony,[2] and theft as a Class D felony.[3] Wilson also appeals her aggregate fifteen-year sentence. We affirm.[4]

### Issues

Wilson raises two issues on appeal, which we restate as:

I. Whether the evidence is sufficient to support her aggravated battery, battery, and theft convictions; and

II. Whether her fifteen-year sentence is inappropriate in light of the na-

---

1. Ind.Code § 35–42–2–1.5.

2. Ind.Code § 35–42–2–1.

3. Ind.Code § 35–43–4–2.

4. We heard oral argument in this case on September 27, 2005, at Jennings County High School in North Vernon, Indiana. We thank counsel for their advocacy and extend our appreciation to the members of the Jennings County Bar for their hospitality and to the Jennings County High School Administration for hosting the event.

ture of offense and the character of the offender.

### Facts and Procedural History

On September 17, 2004, at approximately 2:00 a.m., Lieutenant M. Andrew Bonham ("Lieutenant Bonham") of the Cumberland Police Department—who was working as a part-time security guard for Wal–Mart—responded to an incident of shoplifting, which was occurring at the front entrance of the store. Upon arriving at the scene, Lieutenant Bonham saw Wal–Mart greeter Shirley Burnett ("Burnett") "in the air-lock of the store going back and forth in a type of a blocking motion with another black female," later identified as Wilson. Tr. at 26. At the time, Wilson was carrying "bagged merchandise"—i.e., diapers and baby wipes—in each of her hands and Burnett was preventing Wilson from leaving the store. *Id.* at 26–27. When Lieutenant Bonham approached Wilson and questioned her about the merchandise, Wilson appeared "very upset" and her breath smelled of alcohol. *Id.* at 27. Wilson denied stealing the merchandise and, instead, claimed that she was returning it to Wal–Mart. Wilson could not, however, produce a receipt for the merchandise.

Wilson refused to cooperate with Lieutenant Bonham's investigation and when he tried to prevent her from leaving the store, she "jerked away" and fled from him. *Id.* at 28. Lieutenant Bonham followed Wilson to her car. As Wilson entered her car through the passenger door on the driver's side, Lieutenant Bonham reached into the vehicle and tried to pull her from the automobile. Wilson kicked him several times in the groin.

At this time, Cumberland Police Officer Nichole Gilbert ("Officer Gilbert") arrived to help Lieutenant Bonham "extract [Wilson] from the car." *Id.* at 31. Lieutenant Bonham noticed a black male sitting in the passenger seat of the car. Lieutenant Bonham asked the passenger to exit the car, but the passenger refused. While the Lieutenant dealt with the male passenger, Officer Gilbert continued her efforts to persuade Wilson to exit the vehicle. When Officer Gilbert reached inside the car to pull Wilson out, Wilson punched her in the right arm. Officer Gilbert felt pain from this punch.

Wilson then "lunged into the front seat, head first and reached up and hit the lock button on the driver's side door," and either Wilson or her passenger started the vehicle. *Id.* at 75–76. Through the back passenger door on the driver's side, which was still open, Officer Gilbert was able to unlock and open the driver's door. Because Wilson was combative with the officers, Officer Gilbert sprayed her with mace. After being sprayed in the face, however, Wilson opened her eyes and looked at Officer Gilbert as if the mace had not had any effect.

Realizing that an obstacle prevented Wilson's car from going forward and that the car could only travel in reverse, Lieutenant Bonham became concerned for the safety of Officer Gilbert—who was standing inside the open door of the driver's side, actively fighting with Wilson. Lieutenant Bonham interjected himself between Officer Gilbert and Wilson, attempted to place his right foot on the brake pedal, and demanded that Wilson shut off the vehicle. Lieutenant Bonham also forbade Wilson from putting the car into reverse. Lieutenant Bonham, however, either missed the brake pedal or Wilson accelerated and the car began to back up. Indeed, Officer Gilbert testified that the car moved very quickly as if Wilson had placed it into reverse gear and pressed the gas pedal. Lieutenant Bonham fell to the ground and became trapped underneath

the car—i.e., his left foot and right shoulder were "somehow up underneath the car," and his hand was "either on the rocker panel of the car or the bottom of the seat." *Id.* at 36. While being dragged by the car, Lieutenant Bonham looked up and noticed that Wilson was looking at him.

Once Officer Gilbert realized that Lieutenant Bonham was unable to break free from the car, she drew her weapon and fired two shots into the vehicle, striking Wilson. After the second shot, the vehicle abruptly changed directions, doing a "J-turn." *Id.* at 85. When the vehicle "changed directions or something," Lieutenant Bonham pushed away from the car as hard as he could, but became lodged underneath the driver's door—which had remained open—and the pavement. *Id.* at 38. Meanwhile, Wilson continued driving the vehicle. Eventually, Lieutenant Bonham became "loose from the car," and ended up face down on the pavement. *Id.* at 39. As a result of this incident, Lieutenant Bonham sustained a severely dislocated right shoulder, abrasions to his elbow, and contusions to his left shoulder.

After Lieutenant Bonham had freed himself from the vehicle, Wilson continued to flee the scene. At this time, Officer Nichole Rennaker ("Officer Rennaker") began chasing Wilson's vehicle in her patrol car. Officer Rennaker illuminated her lights, activated the sirens, and chased Wilson for approximately three or four miles, at speeds ranging between eighty and ninety miles an hour. Wilson finally stopped her vehicle after running over some "stop sticks," which had deflated her tires. *Id.* at 175.

On or about September 21, 2004, the State charged Wilson with the following counts: (I) attempted murder as a Class A felony[5] for dragging Lieutenant Bonham with her car; (II) aggravated battery as a Class B felony for dragging Lieutenant Bonham with her car, resulting in the loss of use of his right arm; (III) criminal recklessness as a Class C felony[6] for using her vehicle as a deadly weapon and inflicting serious bodily injury upon Lieutenant Bonham; (IV and V) battery as a Class D felony for her conduct against Lieutenant Bonham and Officer Gilbert, respectively; (VI and VII) resisting law enforcement as a Class D felony[7] for her actions in fleeing from Lieutenant Bonham and Officer Rennaker, respectively; and (VIII) theft as a Class D felony. At trial, the jury found Wilson not guilty of attempted murder, but guilty as charged on the remaining seven counts. The trial court merged counts III, IV, and VI into Count II and entered judgments of convictions on Counts II, V, VII, and VIII.

The trial court then sentenced Wilson to twelve years for her aggravated battery conviction, one year for her battery conviction, one year for her resisting law enforcement conviction, and one year for her theft conviction. The trial court ordered that the sentence on Count II be served consecutive to the sentence on Count V, the sentence on Count V be served consecutive to the sentence on Count VII, the sentence on Count VII be served consecutive to the sentence on Count VIII, and the sentence on Count VIII be served concurrently with the other sentences, for an aggregate sentence of fifteen years. In so doing, the trial court found Wilson's criminal history as an aggravating circumstance and the following mitigating circumstances: (1) incarceration would be a hardship to Wilson's dependents; and (2)

---

**5.** Ind.Code §§ 35–41–5–1, 35–42–1–1.

**6.** Ind.Code § 35–42–2–2.

**7.** Ind.Code § 35–44–3–3.

Wilson's remorse. However, because three out of Wilson's four children are adults and the youngest one was sixteen and, further, because Wilson portends to be the victim, as opposed to the perpetrator, of the crimes, the trial court gave these mitigators little weight. Wilson now appeals.

## Discussion and Decision

### I. Sufficiency of the Evidence

On appeal, Wilson argues that the evidence is insufficient to support her convictions for aggravated battery as a Class B felony, battery as a Class D felony, and theft as a Class D felony.[8] Our standard of review when considering the sufficiency of evidence is well settled. We will not reweigh the evidence or assess the credibility of witnesses. *Robinson v. State,* 699 N.E.2d 1146, 1148 (Ind.1998). Rather, we will only consider the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom. *Id.* We will uphold a conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

### A. Aggravated Battery

■ Wilson first contends that the evidence is insufficient to support her conviction for aggravated battery as a Class B felony. To convict Wilson of aggravated battery, as charged, the State was required to prove, beyond a reasonable doubt, that she (1) knowingly; (2) inflicted injury on Lieutenant Bonham, i.e., a dislocated shoulder; (3) that caused a protracted loss or impairment of the function of a bodily member or organ, i.e., the loss of use of the right arm. *See* Appellant's App. at 22; *see also* Ind.Code § 35-42-2-1.5. Here, Wilson does not dispute that Lieu-

tenant Bonham sustained an injury, which resulted in the protracted loss or impairment of his arm or shoulder. She maintains, however, that her actions giving rise to the aggravated battery conviction were not done knowingly. To support this contention, she asserts that: (1) it was her passenger, not herself, that started the vehicle; (2) Lieutenant Bonham interposed himself between the door and Officer Gilbert; and (3) "the car immediately went into reverse" after she had been sprayed in the face with mace. Appellant's Br. at 11. We find Wilson's contentions or "excuses" unpersuasive.

■ Indiana Code Section 35-41-2-2(b) provides that a person engages in conduct "knowingly" if, when he or she engages in the conduct, the person is aware of a high probability that he or she is doing so. Because knowledge is the mental state of the actor, it may be proved by circumstantial evidence and inferred from the circumstances and facts of each case. *See Young v. State,* 761 N.E.2d 387, 389 (Ind.2002); *see also Roach v. State,* 695 N.E.2d 934, 941 (Ind.1998), *modified on reh'g on other grounds,* 711 N.E.2d 1237 (Ind.1999).

In the present case, the evidence reveals that, after being sprayed in the face with mace, Wilson opened her eyes and looked at Officer Gilbert as if the spray had not had any effect upon her. The record also demonstrates that, throughout the incident in question, Wilson ignored repeated demands by both Lieutenant Bonham and Officer Gilbert to get out of, and turn off, the vehicle. Instead, Wilson, or her passenger, started the engine and placed the vehicle in reverse gear. Wilson then pressed her foot against the accelerator, causing the car to move backwards, trapping Lieutenant Bonham underneath. Further, as the vehicle was dragging him,

---

8. Wilson does not challenge her resisting law enforcement conviction.

Lieutenant Bonham looked up and saw that Wilson was looking directly at him. Yet, she still did not stop the vehicle and try to free the trapped officer. Rather, Wilson continued driving until the Lieutenant was able to free himself. Given this evidence, a reasonable jury could have found, beyond a reasonable doubt, that Wilson was aware of a high probability that her conduct would lead to a serious bodily injury, including the protracted loss or impairment of Lieutenant Bonham's arm or shoulder.[9] Thus, the evidence is sufficient to sustain Wilson's conviction for aggravated battery. *See, e.g., Lush v. State*, 783 N.E.2d 1191, 1197 (Ind.Ct.App. 2003).

### B. Battery

■ Second, Wilson challenges the sufficiency of the evidence supporting her battery conviction. To convict Wilson of battery as a Class D felony, the State was required to prove that she: (1) knowingly; (2) touched Officer Gilbert; (3) in a rude, insolent, or angry manner; (4) resulting in bodily injury, i.e., physical pain; (5) while Officer Gilbert was engaged in the execution of her official duty. Appellant's App. at 23; *see also* Ind.Code § 35–42–2–1(a)(2)(A). Wilson does not contest that she punched Officer Gilbert—who was responding to a crime in her official capacity—in the arm, thereby causing her pain. Wilson argues, however, that the evidence is insufficient to prove that Officer Gilbert sustained a bodily injury because the officer "suffered no impairment." We disagree.

Indiana Code Section 35–41–1–4 defines "bodily injury" as "any impairment of physical condition, including physical pain." Here, the evidence reveals, and Wilson concedes, that Wilson punched Officer Gilbert in the right arm, causing her pain, i.e., bodily injury. This evidence is sufficient to support Wilson's battery conviction.

### C. Theft

■ Wilson next maintains that the evidence is insufficient to support her conviction for theft as a Class D felony. To convict Wilson of theft, as charged, the State was required to demonstrate that she: (1) knowingly; (2) exerted unauthorized control over the property of another person, i.e., disposable diapers and baby wipes belonging to Wal–Mart; (3) with the intent to deprive the other person of any part of its value or use. *See* Appellant's App. at 24; *see also* Ind.Code § 35–43–4–2(a). To "exert control over property" is "to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." Ind.Code § 35–43–4–1(a). Unauthorized control refers to control that is "without the other person's consent" or "in a manner or to an extent other than that to which the other person has consented." Ind.Code § 35–43–4–1(b).

Wilson argues that she never exerted unauthorized control over the diapers and baby wipes and, further, that the evidence

---

**9.** At oral argument, Wilson argued that she did not knowingly batter Lieutenant Bonham on September 17, 2004, but rather merely reacted to the events as they occurred, as those events rose to the equivalent of a level 5 "hurricane." We find this argument unpersuasive, however, in light of the fact that Wilson put the events, or, in her words, the "hurricane," in motion. Moreover, we note that the jury was in the best position to weigh evidence and judge the credibility of witnesses, including their demeanor, in deciding whom to believe or disbelieve. By asserting that she was merely reacting to the events as they occurred, Wilson is requesting us to reweigh the evidence in her favor, which we will not do.

adduced at trial merely demonstrated that she was questioned about a possible theft, in close proximity to the merchandise, which was lying on the ground of the Wal-Mart store. We disagree.

The State presented sufficient evidence from which a jury could find that Wilson exerted unauthorized control over, and therefore theft of, the diapers and wipes. In particular, the record reveals that, while responding to a possible shoplifting incident at the entrance—and exit—of Wal-Mart, Lieutenant Bonham saw Wilson carrying "bagged merchandise"—i.e., diapers and baby wipes—in each of her hands, for which she could not produce a receipt. Tr. at 26–27. At the time, Burnett—the store's greeter—was preventing Wilson from exiting the store. When Lieutenant Bonham approached Wilson and questioned her about the merchandise, Wilson was noticeably upset and uncooperative. This evidence is sufficient to show that Wilson exerted unauthorized control over the baby products in dispute and, thus, to support Wilson's conviction for theft. *See, e.g., Chambliss v. State,* 746 N.E.2d 73, 78 (Ind.2001) (holding that the defendant's statement and the concealment of the lunch meat was sufficient evidence from which a jury could infer "unauthorized control," and therefore theft); *see also Hartman v. State,* 164 Ind.App. 356, 359, 328 N.E.2d 445, 447 (1975) (noting that "testimony ... that [the defendant] was discovered near the door with a shirt he had not paid for, hidden under his jacket permits an inference that he was in the process of leaving the store, without paying for the shirt, and was exerting unauthorized control over the property"); *and* Ind.Code § 35–43–4–4(c) providing

that evidence that a defendant: (1) concealed property displayed or offered for sale; and (2) removed the property from any place within the business premises at which it was displayed or offered to a point beyond that at which payment should be made constitutes prima facie evidence of the defendant's intent to deprive the owner of the property of a part of its value and that the defendant exerted unauthorized control over the property.

## II. Inappropriate Sentence

 Lastly, Wilson contends that her fifteen-year sentence is inappropriate in light of the nature of the offenses and the character of the offender.[10] In general, sentencing decisions are within the trial court's sound discretion. *Cotto v. State,* 829 N.E.2d 520, 523 (Ind.2005). However, Indiana Appellate Rule 7(B) permits us to revise a sentence if, after due consideration of the trial court's decision, "the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *See Ruiz v. State,* 818 N.E.2d 927, 928 (Ind. 2004).

 Wilson urges this Court to revise her sentence to an executed six-year term, on the ground that the trial court did not properly balance the aggravating and mitigating circumstances. If a trial court relies upon aggravating or mitigating circumstances to modify the presumptive sentence, as it did here with respect to the aggravated battery conviction, it must: (1) identify all significant aggravating and mitigating circumstances; (2) explain why each circumstance is aggravating or miti-

10. For her aggravated battery as a Class B felony conviction, Wilson received an enhanced sentence of twelve years. *See* Ind. Code § 35–50–2–5 ("A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances ....").

gating; and (3) articulate the evaluation and balancing of the circumstances. *Cotto,* 829 N.E.2d at 523–24 (citing *Wooley v. State,* 716 N.E.2d 919, 929 (Ind.1999), *reh'g denied* ).

The trial court in this case identified both aggravating and mitigating circumstances, explained each classification, and articulated its balancing of the aggravating and mitigating circumstances. Specifically, the trial court found, as the sole aggravating circumstance, Wilson's criminal history—which consisted of the following convictions: (1) in 1990, resisting law enforcement as a Class D felony; (2) in 1990, disorderly conduct as a Class B misdemeanor; (3) in 1997, residential entry as a Class D felony; (4 and 5) in 1999 and 2001, public intoxication as a Class B misdemeanor; and (6) in 2001, possession of cocaine as a Class D felony. In addition, in determining the appropriate weight to assign her criminal history, the trial court considered that, in 2002, Wilson's probation on the possession offense was revoked.

The trial court also found two mitigating circumstances: (1) the fact that Wilson's incarceration would be a hardship to her dependents; and (2) her remorse. The trial court gave these mitigating factors little weight, however, because Wilson only has one minor child who was sixteen at the time of sentencing and, further, because, during the trial, Wilson portrayed herself more as a victim than the perpetrator of the offenses. The trial court thus followed proper procedures, and, under these circumstances, we cannot conclude that the trial court's balancing of the aggravating and mitigating circumstances resulted in an inappropriate sentence. *See Kelly v. State,* 719 N.E.2d 391, 395 (Ind.1999) (noting that it is within the trial court's discretion to determine whether mitigating circumstances are significant and what

weight to accord to the identified circumstances), *reh'g denied.*

Moreover, turning to the nature of the offenses and the character of the offender, we note that, to support a drug addiction, Wilson stole diapers and baby wipes from Wal–Mart. When she was caught with the merchandise, rather than admitting her offense, Wilson fled the scene of the crime, battered Lieutenant Bonham and Officer Gilbert, and knowingly drove her vehicle in a manner that trapped Lieutenant Bonham underneath her car. While cognizant of the fact that Lieutenant Bonham was being dragged by her car, Wilson continued to drive until her tires were eventually deflated, forcing Lieutenant Bonham to risk life and limb to free himself. As for Wilson's character, we observe that, in addition to her six convictions, she has been in trouble with the law numerous times, only those charges were either not filed or later dismissed. *See Cotto,* 829 N.E.2d at 526 (noting that an arrest record, without more, does not establish the historical fact that a defendant committed a criminal offense and, thus, may not be properly considered as evidence of criminal history; however, such information may be relevant to the trial court's assessment of the defendant's character in terms of the risk that he or she will commit another crime). Accordingly, Wilson's sentence is not inappropriate in light of the nature of the offenses and the character of the offender.

For the foregoing reasons, we affirm Wilson's convictions for aggravated battery, battery, and theft, as well as her aggregate fifteen-year sentence.

Affirmed.

BAKER, J., and DARDEN, J., concur.