## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 09 2020, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael G. Moore
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Craig Borodach,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 9, 2020<br><br>Court of Appeals Case No.<br>20A-CR-956<br><br>Appeal from the Vermillion Circuit Court<br><br>The Honorable Jill D. Wesch, Judge<br><br>Trial Court Cause No.<br>83C01-1903-F5-8 |

**Friedlander, Senior Judge.**

[1] Craig Borodach appeals his conviction and sentence for battery resulting in bodily injury to a public safety official, a Level 5 felony.[1] He contends that the evidence is insufficient to support his conviction and that his sentence is inappropriate in light of the nature of the offense and his character. We affirm.

[2] On March 16, 2019, James Kelly was driving to dinner in Terre Haute when he saw a red pick-up truck pull onto the highway. The pick-up was driving twenty to twenty-five miles per hour under the speed limit, and when Kelly attempted to pass the truck in the left lane, the truck suddenly swerved into the left lane. The truck then swerved back into the right lane, went onto the shoulder of the highway, and then went back into the right lane. Kelly slowed his vehicle and got into the right lane behind the truck. He followed the truck and called 911. As Kelly watched, the truck continued weaving and almost hit the guardrail. After speaking to the 911 operator, Kelly eventually turned off the highway and headed back to Terre Haute.

[3] Thomas Klotz was also driving in Terre Haute on that night, and, when he entered the highway, he saw a van driving with its hazard lights on following a red pick-up truck that was driving recklessly. Klotz watched as the truck swerved across the highway and came very close to striking the guardrail several times. Like Kelly, Klotz called 911. Klotz stayed behind the van that was following the truck, and eventually the truck turned off the highway onto a

---

[1] Ind. Code § 35-42-2-1(g)(5)(A) (2018).

smaller road. When it did so, it swerved into the left lane, and then swerved back into the right lane narrowly avoiding a head-on collision. As Klotz continued following the van and the truck, he saw red and blue emergency police lights ahead of them and, when they reached the police vehicles, he heard the officer yell for the truck to stop.

[4] Meanwhile, Deputy Chad Hennis with the Vermillion County Sheriff's Department received a radio dispatch of a possible impaired driver. On the way to the location, Deputy Hennis radioed Clinton County for assistance.

[5] Officer John Alkire of the Clinton City Police Department was at the police department when he heard the dispatch over the radio that a truck was "all over the roadway." Tr. Vol. 4, p. 23. Although the truck was not in the response area for the Clinton City Police Department, Officer Alkire continued to listen to the dispatch. Hearing that the truck almost hit another vehicle and that it was now approaching the area, Officer Alkire went to assist. When he heard that the truck was headed toward a very dangerous intersection, he turned on his emergency lights and proceeded to the intersection. When he arrived at the intersection, he saw Deputy Hennis there in his vehicle with the emergency lights activated. Officer Alkire pulled into the pick-up truck's lane and stopped his vehicle.

[6] The officers could see the red pick-up truck slowly approaching as well as the other drivers following the truck with their hazard lights on. The pick-up was driving in the ditch, and it slowed down even more as it neared the intersection.

When it came to the intersection, the pick-up truck stopped, and Officer Alkire exited his vehicle. The officer had almost cleared the door in exiting his car when he heard the truck accelerate and saw the truck coming toward him. The truck made contact with Officer Alkire's vehicle, slamming the door against the officer's chest and pinning him between the door and the frame of his car. Officer Alkire fired two shots at the truck in an effort to stop it, but it continued pushing into his car door. The pressure on the officer's chest was mounting, causing him to have difficulty breathing, so he fired three more shots at the truck. At that point, the truck stopped moving. Officer Alkire was extricated from the car and taken to the hospital where he was treated and released. For several weeks, the officer endured pain and difficulty breathing caused by the injuries to his lungs and chest cavity.

[7] Borodach was identified as the driver of the red pick-up truck. He was taken from the scene to the hospital where his blood was drawn. Toxicology testing on Borodach's blood revealed that the ethyl alcohol concentration in his blood was 0.337%, over four times the legal limit.

[8] Based upon this incident, the State charged Borodach with Count 1 battery resulting in bodily injury to a public safety official, a Level 5 felony;[2] Count 2 operating a vehicle with a blood alcohol content of at least .08 resulting in

---

[2] Ind. Code § 35-42-2-1(g)(5)(A).

serious bodily injury, a Level 6 felony;[3] Count 3 operating a vehicle while intoxicated, a Class A misdemeanor;[4] and Count 4 operating a vehicle with a blood alcohol content of .15 or more, a Class A misdemeanor.[5] A jury found Borodach guilty of Counts 1, 3, and 4. The court entered judgment of conviction on Counts 1 and 3 and sentenced Borodach to an aggregate six-year sentence, comprised of six years on Count 1 and one year on Count 3, to be served concurrently. The court ordered four of the six years executed at the Department of Correction, with the remaining two years served on formal probation. Borodach now appeals his conviction and sentence for Count 1.

## 1. Sufficiency of the Evidence

Borodach first asserts the evidence is insufficient to sustain his conviction of battery resulting in bodily injury to a public safety official. When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Sandleben v. State*, 29 N.E.3d 126 (Ind. Ct. App. 2015), *trans. denied*. Instead, we consider only the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt, the

---

[3] Ind. Code § 9-30-5-4 (2018).

[4] Ind. Code § 9-30-5-2 (2001).

[5] Ind. Code § 9-30-5-1 (2018).

verdict will not be disturbed. *Labarr v. State*, 36 N.E.3d 501 (Ind. Ct. App. 2015).

[10] In order to obtain a conviction for battery resulting in bodily injury to a public safety official in this case, the State must have proved beyond a reasonable doubt that (1) Borodach (2) knowingly (3) touched (4) Officer Alkire (5) in a rude, insolent, or angry manner (6) resulting in bodily injury (7) to Officer Alkire, a public safety official (8) while he was engaged in his official duties. *See* Appellant's App. Vol. II, p. 21; *see also* Ind. Code § 35-42-2-1(g)(5)(A). Borodach challenges the State's evidence that his actions giving rise to the battery conviction were done knowingly or in a rude, insolent, or angry manner.

### *a. Knowingly*

[11] "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b) (1977). Because knowledge is the mental state of the actor, it may be proved by circumstantial evidence and inferred from the circumstances and facts of the case. *Wilson v. State*, 835 N.E.2d 1044 (Ind. Ct. App. 2005), *trans. denied*. Thus, the trier of fact must resort to reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the defendant's conduct and the natural consequences of what might be expected from that conduct, a showing or inference of the intent to commit that conduct exists. *Lush v. State*, 783 N.E.2d 1191 (Ind. Ct. App. 2003).

[12]     Here, there was ample evidence that Borodach acted knowingly. The record demonstrates that Borodach had slowed and then stopped his truck at the intersection where Officer Alkire's vehicle blocked his lane. Officer Alkire testified:

> [Officer Alkire]:     I stopped my vehicle and then when the vehicle stopped I exited my vehicle.
>
> [Prosecutor Aukerman]:   All right. Now it's your testimony that this vehicle, this red 2008 GMC truck, stopped?
>
> [Officer Alkire]:     Correct.
>
> [Prosecutor Aukerman]:   Is there any doubt in your mind based on all the stops that you've been involved in and made in the military and as a police officer that this truck stopped?
>
> [Officer Alkire]:     No doubt . . .
>
> [Prosecutor Aukerman]:   What did you do next?
>
> [Officer Alkire]:     I put the vehicle in park, exited the vehicle. As soon as I exited the vehicle at that time we're initiating into a high risk traffic stop because we don't know the situation. We don't know all the factors of what's going on. And it was at that time that I had just cleared my door just about.
>
> [Prosecutor Aukerman]:   Are your feet on the pavement?
>
> [Officer Alkire]:     Both of my feet are on the pavement. I'm facing the vehicle.

[Prosecutor Aukerman]: Where's your door?

[Officer Alkire]: My door is right here open in front of me. And then I hear the engine rev up and then the vehicle come right at my vehicle and me.

**************

[Prosecutor Aukerman]: Now you've watched this video. The jury has watched this video. We see this red truck coming and making contact with your car. You say at some point it stopped. I think it's a fair assessment from that video to say it's hard to tell if it stopped or not by that video. Wouldn't you agree?

[Officer Alkire]: Correct.

[Prosecutor Aukerman]: So tell the jury how you know that vehicle stopped.

[Officer Alkire]: Because I exited my vehicle and because of my training and experience I wouldn't have gotten out of the vehicle if I didn't feel it was safe to do so.

**************

[Prosecutor Aukerman]: So is it your testimony that this truck stops somewhere out in front of your vehicle?

[Officer Alkire]: Yes.

[Prosecutor Aukerman]: And you then start to exit your car?

[Officer Alkire]:     Correct.

[Prosecutor Aukerman]:   Then what do you hear?

[Officer Alkire]:     I hear the engine accelerate and that's when the next noise I heard was the crunching of the vehicles.

Tr. Vol. 4, pp. 31-32, 54-55.

Borodach alleges the video demonstrates he was attempting to avoid contact with Officer Alkire's vehicle by going around the side of the vehicle. In support of his claim, he cites to Deputy Hennis' testimony on cross-examination:

[Defense Counsel]: You were aware [Borodach] was going to hit [Officer Alkire] head on though. Right?

[Deputy Hennis]:   Yes.

[Defense Counsel]: But he took the maneuver to evade hitting him? Would that be fair to say?

[Deputy Hennis]:   He took a maneuver, yes.

Tr. Vol. 3, p. 188. This testimony, however, does not address the evidence that Borodach brought his truck to a complete stop before revving the engine and accelerating into Officer Alkire and his vehicle.

The jury heard all the testimony, including that of Officer Alkire that, after hitting the officer's vehicle and pinning him, Borodach stopped accelerating only after he was shot. In addition, the jury viewed the video footage from

Officer Alkire's in-car camera and heard the Prosecutor acknowledge that it was difficult to discern from the video whether the truck completely stopped. When reviewing a claim that the evidence is insufficient to support a conviction, a reviewing court respects the exclusive province of the jury to weigh any conflicting evidence. *Mickens v. State*, 115 N.E.3d 520 (Ind. Ct. App. 2018), *trans. denied* (2019). Further, it is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Tongate v. State*, 954 N.E.2d 494 (Ind. Ct. App. 2011), *trans. denied* (2012).

[15] Borodach is merely asking us to reweigh the evidence, which we cannot do. Given the evidence, a reasonable jury could have found that Borodach was aware of a high probability that his conduct would inflict injury upon Officer Alkire.

### b. Rude, Insolent, or Angry Manner

[16] Borodach also claims that he was "severely intoxicated and was hardly in control of his vehicle" such that running into Officer Alkire's vehicle was not done in a rude, insolent, or angry manner. Appellant's Br. p. 11. Yet, no evidence was presented to show his intoxication was involuntary, and voluntary intoxication is not a defense in a criminal prosecution. *Villaruel v. State*, 52 N.E.3d 834 (Ind. Ct. App. 2016); *see also* Ind. Code § 35-41-2-5 (1997).

[17] Moreover, our review of the record reveals that the evidence was sufficient for the jury to reasonably conclude that Borodach touched Officer Alkire in an insolent manner. This Court has previously observed that the term "insolent" is

defined as "boldly disrespectful in speech or behavior; impertinent; impudent" and "lacking usual or proper respect for rank or position." *K.D. v. State*, 754 N.E.2d 36, 41 (Ind. Ct. App. 2001). Here, the evidence showed that Borodach was driving on public roadways while heavily intoxicated. When the police attempted to stop him, he ignored Officer Alkire's commands to stop, revved his truck's engine, and accelerated into Officer Alkire, injuring him. A reasonable jury could conclude from this evidence that Borodach acted in an insolent manner by boldly disregarding the authority of Officer Alkire and the other officers.

[18] There was sufficient evidence to establish that Borodach knowingly inflicted injury upon Officer Alkire in a rude, insolent, or angry manner.

## 2. Inappropriate Sentence

[19] Borodach's second and final contention is that his sentence is inappropriate in light of the nature of his offense and his character.

[20] Although a trial court may have acted within its lawful discretion in imposing a sentence, article 7, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we determine that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Thompson v. State*, 5 N.E.3d 383 (Ind. Ct. App. 2014). However, "we must and should exercise deference to a trial court's sentencing

decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). Such deference to the trial court's judgment should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character). *Stephenson v. State*, 29 N.E.3d 111 (Ind. 2015). Thus, the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265 (Ind. Ct. App. 2008). The defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073 (Ind. 2006).

[21] To assess whether a sentence is inappropriate, we look first to the statutory range established for the class of the offense. Here, Borodach was convicted of a Level 5 felony, for which the advisory sentence is three years, with a minimum sentence of one year and a maximum sentence of six years. Ind. Code § 35-50-2-6 (2014). The court sentenced Borodach to the maximum sentence of six years but ordered that only four years be executed.

[22] Next, we look to the nature of the offense. "The nature of the offense is found in the details and circumstances surrounding the offense and the defendant's participation therein." *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018), *trans. denied* (2019). The alcohol concentration in Borodach's blood was

more than four times the legal limit. In this extreme state of intoxication, Borodach got into his truck and created a deadly situation by driving on public roadways. He swerved all over the road, ran off the road numerous times almost hitting guardrails, and narrowly avoided a head-on collision. When police attempted to end the dangerous situation Borodach was creating, he ignored the roadblock of sorts and Officer Alkire's commands to stop, revved his truck's engine, and accelerated into Officer Alkire, injuring him.

[23] Finally, we turn to the character of the offender. The character of the offender is found in what we learn of the defendant's life and conduct. *Id.* The significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, and proximity of prior offenses in relation to the current offense, as well as the number of prior offenses. *Sandleben*, 29 N.E.3d 126. Yet, even a minor criminal history is a poor reflection of a defendant's character. *Moss v. State*, 13 N.E.3d 440 (Ind. Ct. App. 2014), *trans. denied*.

[24] Borodach's criminal history is comprised of five misdemeanors: battery causing bodily harm, two counts of driving under the influence, and two counts of driving on a suspended license. Despite receiving counseling following his convictions of driving under the influence, Borodach continued to drink in the intervening years between his two 1997 offenses of driving under the influence and the current offense. During his chemical dependency consultation at the hospital, Borodach described himself as "functional" and stated he had been "fighting this for over 30 years." Ex. Vol. 6, p. 13 (Exhibit 13). He also

acknowledged there was "no excuse to not take advantage of help." *Id.* Thus, although Borodach touts the passage of twenty-two years since his last conviction, by his own admission he has a substance abuse problem and has failed to be honest with himself about it or done anything to treat it. At the sentencing hearing, the court took into consideration additional criminal conduct of Borodach, stating: "By your own admission as well there have been other occasions where you weren't caught but have driven under the influence of alcohol." Tr. Vol. 4, p. 208.

[25] In an attempt to portray his character in a positive light, Borodach points to his employment history, his progress in substance abuse treatment between the time of the offense and sentencing, his payment of restitution to the City of Clinton, the care he provides for his dependents, the punitive impact of his gunshot wounds, and his low score in the risk-to-reoffend category of the risk assessment. Yet, other than listing these factors that he had already presented at sentencing, Borodach offers no argument as to their compelling nature that would overcome the deference we show to the trial court's sentencing decision.[6]

---

[6] Although Borodach frames his sentencing argument purely as an argument that his sentence is inappropriate, he alleges that the trial court "placed too much weight on one poorly written line in Borodach's statement to the court." Appellant's Br. p. 15. We remind counsel that whether a trial court has abused its discretion by improperly recognizing aggravators and mitigators when sentencing a defendant and whether a defendant's sentence is inappropriate under Indiana Appellate Rule 7(B) are two distinct analyses. *King*, 894 N.E.2d 265.

# Conclusion

[26] Based on the foregoing, we conclude the State presented sufficient evidence to support Borodach's conviction of battery resulting in bodily injury to a public safety official. Additionally, we conclude that Borodach has not met his burden of presenting compelling evidence portraying in a positive light the nature of his offense or his character in order to overcome the trial court's sentencing decision.

[27] Judgment affirmed.

Najam, J., and Bailey, J., concur.