**FILED**
Mar 10 2016, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court



ATTORNEY FOR APPELLANT

Cynthia M. Carter
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cory Lowden,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 10, 2016

Court of Appeals Case No.
49A02-1503-CR-170

Appeal from the Marion Superior
Court

The Honorable Mark Stoner

Trial Court Cause No.
49G06-1311-FB-75141

**Vaidik, Chief Judge.**

# Case Summary

[1] The State charged Cory Lowden with aggravated battery after he punched another man, breaking the man's jaw so severely that surgery was required to repair it. At trial, Lowden tendered a jury instruction that applied the mens rea to every element of aggravated battery, including the severity of the resulting injury. According to Lowden's instruction, the State would have to prove that, when he punched his victim in the face, Lowden acted with knowledge that one punch would result in protracted loss or impairment of the function of a bodily member or organ. The trial court rejected Lowden's instruction. According to Indiana Code section 35-41-2-2(d), the level of culpability required for the commission of an offense is required with respect to "every material element of the prohibited conduct." The prohibited conduct in the aggravated battery statute is to inflict injury on another. The severity of the injury is not an element of the prohibited conduct, but a result of it. Accordingly, the trial court properly rejected Lowden's tendered instruction as an incorrect statement of the law. We affirm.

# Facts and Procedural History

[2] Cory Lowden attended a Halloween party on October 26, 2013, at his friends' home. The garage of the home, which was being used as a smoking area, had a ping-pong table set up for playing beer pong. During the party, Lowden overheard portions of a conversation between Chad Sandefur and Katie Turner that took place in the garage. Sandefur and Turner were discussing Turner's

recovery from a recent brain surgery and her difficulties with hospital bills and Medicaid. Lowden interrupted and asked Turner, "well, why the F [sic] do you think you deserve Medicaid[?]" Tr. p. 37. Lowden and Sandefur exchanged words from opposite sides of the ping-pong table before Sandefur began to leave the garage. Sandefur walked away from Lowden, toward the door to the house. Lowden followed Sandefur, catching up to him at the stairs leading from the garage to the house. Sandefur turned around to face Lowden. Some sort of exchange took place between the two men, which ended when Lowden punched Sandefur in the face.

[3] Lowden's single punch knocked Sandefur unconscious and broke his jaw in two places. Sandefur's jaw was surgically repaired, he was placed on a restrictive diet to prevent him from chewing food, and his activities were restricted during his recovery. Sandefur developed an infection, and the bones did not properly heal together. A second, more extensive surgery was required, lengthening his recovery.

[4] Lowden was charged with aggravated battery under Indiana Code section 35-42-2-1.5, which, at the time of the incident, provided in part: "A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes: . . . (2) protracted loss or impairment of the function of a

bodily member or organ; . . . commits aggravated battery, a Class B felony."[1]  A jury trial was held in February 2015.

[5]   During trial, Turner described the argument between Sandefur and Lowden—beginning with the heated verbal exchange, followed by Sandefur attempting to leave the area and Lowden following him, and culminating in the punch.  At the end of Turner's testimony, the prosecutor led her through a recap of what happened when Sandefur tried to leave the garage.

[6]   Lowden tendered a final jury instruction that would have required the State to prove he was "aware of a high probability that his conduct would lead to a serious bodily injury, including the protracted loss or impairment of the function of a bodily member or organ."  Appellant's App. p. 42.  However, the trial court rejected this instruction and gave a general instruction on the definition of "knowingly" and an instruction on the elements of aggravated battery.

[7]   The jury found Lowden guilty.  The trial court sentenced Lowden to eight years, with two years suspended, and one year of probation.

# Discussion and Decision

---

[1] A new version of the statute went into effect on July 1, 2014, after Lowden's offense.  The State charged Lowden under the version of the aggravated-battery statute in effect from 1997 through June 30, 2014.

[8] Lowden raises two issues on appeal: (1) whether the trial court erroneously rejected his proposed jury instruction that applied the mens rea for aggravated battery to the severity of the injury and (2) whether the prosecutor's direct examination of Turner was misleading, constituting misconduct.

# I. Jury Instructions

[9] Lowden argues that the trial court erred when it rejected a portion of his proposed jury instruction requiring the State to prove that Lowden knew his conduct would lead to serious bodily injury. Instruction of the jury is within the discretion of the trial court, and we review for abuse of that discretion. *Johnson v. State*, 959 N.E.2d 334, 338 (Ind. Ct. App. 2011), *trans. denied*. Jury instructions are considered as a whole and in reference to each other. *Id.* The instructions must be a complete, accurate statement of the law that will not confuse or mislead the jury. *Id.* To determine whether the refusal of a tendered instruction constitutes error, we consider: (1) whether the tendered instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Washington v. State*, 997 N.E.2d 342, 345-46 (Ind. 2013).

[10] Lowden's tendered instruction provided:

> PROPOSED FINAL INSTRUCTION NO. 3
>
> A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he doing so.

> With regard to the offense charged in the information, Aggravated Battery, a Class B felony, a person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that his conduct would lead to a serious bodily injury, including the protracted loss or impairment of the function of a bodily member or organ.

Appellant's App. p. 42. The trial court gave only the first paragraph of Lowden's instruction. Lowden contends that the trial court also should have given the second paragraph, which applies the mens rea to the severity of the injury.

[11] To determine the elements of aggravated battery to which the "knowingly or intentionally" requirement applies, we refer to Indiana Code section 35-41-2-2(d), which provides that the level of culpability required for the commission of an offense is required with respect to "every material element of the prohibited conduct." "Prohibited conduct" and "element" are not synonymous. *D.H. v. State*, 932 N.E.2d 236, 238 (Ind. Ct. App. 2010). The culpability requirement applies to the conduct prohibited by the statute, not to the result of that conduct. *See id.* The prohibited conduct in the aggravated-battery statute is to "inflict injury on another[.]" *Mann v. State*, 895 N.E.2d 119, 124 (Ind. Ct. App. 2008).

[12] Additionally, this Court has held that the severity of the injury and the identity of the victim are aggravating factors—not elements of conduct—under other battery statutes. *See Maldonado-Morales v. State*, 985 N.E.2d 25, 28 (Ind. Ct. App. 2013) (deciding that the mens rea applied only to "touched a person in a

rude, insolent, or angry manner" and not to the identity of the person struck under the domestic-battery statute); *D.H.*, 932 N.E.2d at 239 (finding under the battery statute "that the fact that the victim of a battery is a school employee in the course of her duties is akin to a battery causing a serious bodily injury—it is an aggravating circumstance that increases the penalty for the crime"); *Markley v. State*, 421 N.E.2d 20, 21-22 (Ind. Ct. App. 1981) (concluding that proof of the "intentionally or knowingly" element does not apply to the "serious bodily injury" element of Class C battery). Applying the reasoning from our prior decisions to the aggravated-battery statute, we conclude that the severity of the injury is not an element of the prohibited conduct, but a result of it. Accordingly, the State was required to prove only that Lowden knowingly or intentionally inflicted injury upon Sandefur and not that Lowden knew he would cause serious bodily injury.

[13] Lowden argues that *Wilson v. State*, 835 N.E.2d 1044 (Ind. Ct. App. 2005), *trans. denied*, and *Thomas v. State*, 656 N.E.2d 819 (Ind. Ct. App. 1995), support the proposition that the mens rea applies to the severity of the injury under the aggravated-battery statute. In both *Wilson* and *Thomas*, the defendants argued that there was insufficient evidence of the mens rea to support aggravated-battery convictions. In *Wilson*, after reviewing the record, this Court concluded:

> Given this evidence, a reasonable jury could have found, beyond a reasonable doubt, that Wilson was aware of a high probability that her conduct would lead to a serious bodily injury, including the protracted loss or impairment of Lieutenant Bonham's arm or shoulder. Thus, the evidence is sufficient to sustain Wilson's conviction for aggravated battery.

835 N.E.2d at 1050. And in *Thomas* we concluded:

> The fact that Thomas bit Cleora multiple times, coupled with the obvious severity of the injuries to Cleora's left eye, as reflected in photographs taken shortly after the incident, belie Thomas's claim that he did not intend to inflict serious injury during the attack. The evidence was sufficient to permit a reasonable inference that Thomas possessed the requisite mens rea for the offense of aggravated battery at the time of the occurrence.

*Thomas*, 656 N.E.2d at 824.

[14] Lowden notes that the Court included the severity of the injury as part of its conclusion that the requisite mens rea was proven. Therefore, he concludes, the mens rea must apply to the severity of the injury. We disagree. The passages Lowden cites are not intended to be a statement of the State's burden of proof. Rather, they are statements of the sufficiency of the evidence actually adduced during those particular trials—which exceeded the statutory requirements. The "'mere fact that certain language or expression[s] [are] used in the opinions of this Court to reach its final conclusion does not make it proper language for instructions to a jury.'" *Gravens v. State*, 836 N.E.2d 490, 495 (Ind. Ct. App. 2005) (quoting *Ludy v. State*, 784 N.E.2d 459 (Ind. 2003)).

[15] Therefore, to convict Lowden of aggravated battery, the State had to prove beyond a reasonable doubt: (1) "that [Lowden] knowingly . . . inflicted injury on [Sandefur]" and (2) "that the injury caused a protracted loss or impairment of the function of a bodily member or organ." *Mann*, 895 N.E.2d at 121. The State was not required to prove that Lowden was "aware of a high probability

that his conduct would lead to a serious bodily injury," as suggested by Lowden's tendered instruction. Because it was not a correct statement of the law, the trial court properly refused to submit Lowden's instruction to the jury.[2]

## II. Prosecutorial Misconduct

[16] Lowden next argues that the prosecutor misled its witness, Turner, during its examination of her and that this constitutes prosecutorial misconduct. When a party believes there is misconduct, the correct procedure is to object and request the trial court to admonish the jury. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). If the party is not satisfied with the admonishment, then he or she should move for mistrial. *Id.* Failure to request an admonishment or to move for mistrial results in waiver. *Id.*

[17] Lowden acknowledges that he waived his claim of prosecutorial misconduct by failing to object at trial. Appellant's Reply Br. p. 10. Our review is different where a claim of prosecutorial misconduct has been waived. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). The defendant must (1) establish the grounds for prosecutorial misconduct and (2) establish that the prosecutorial misconduct constituted fundamental error. *Id.* at 667-68.

---

[2] Lowden also argues that the trial court should have given his instruction because the prosecutor referred to a civil liability standard during voir dire, and the jury later indicated that the mens rea was confusing by asking questions during deliberations. Even if it is true that the jury might have benefitted from additional, clarifying instructions, it would never be appropriate to give an instruction that states the law inaccurately.

[18]    In this case, we need only examine the first prong, prosecutorial misconduct. Lowden  must prove (1) that misconduct occurred, and if it did, (2) that the misconduct, considering all of the circumstances, placed him in a position of grave peril to which he would not have been subjected otherwise.  *See id.* at 667. Whether a prosecutor's conduct constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct.  *Id.*  "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct."  *Cooper*, 854 N.E.2d at 835.

[19]    Lowden contends that the prosecutor committed misconduct by misleading Katie Turner during the following exchange:

> Q.  Did you ever hear [Lowden] say anything, get away from me, leave me alone, back off?
>
> A.  No.
>
> Q.  And was [Sandefur] walking away from [Lowden] when [Lowden] approached him?[3]
>
> A.  Yes.
>
> Q.  And I believe you said he wasn't even looking at him; is that correct?
>
> A.  Correct.

---

[3] Lowden omitted this question and answer from his reply brief.

Tr. p. 55.

[20] Lowden argues that this exchange creates the impression that Lowden punched Sandefur from behind, which would be inconsistent with the earlier portion of Turner's testimony. However, after reviewing all of Turner's testimony, it is clear that this exchange is not in reference to the actual punch. Rather, it addresses how Lowden and Sandefur arrived at the location of the punch. Earlier in Turner's testimony she explained that the conflict began as a shouting match, with the two men on opposite sides of a beer pong table. She described Sandefur walking to the house and Lowden following him. Both questions asked by the prosecutor at the end of Turner's direct examination refer to who, Lowden or Sandefur, closed the original physical distance between them. The questions did not refer to the position of Lowden and Sandefur at the time of the punch. In light of the surrounding context, the two questions do not relate to the actual punch, as Lowden now suggests.

[21] Therefore, Lowden's contention that the prosecutor misled Turner into giving conflicting testimony is without merit. Seeing no prosecutorial misconduct, we need not proceed to the question of fundamental error.

[22] Affirmed.

Bailey, J., and Crone, J., concur.