## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 04 2016, 5:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jorge Lopez,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 4, 2016

Court of Appeals Case No.
49A04-1602-CR-254

Appeal from the Marion Superior Court

The Honorable Mark Stoner, Judge

Trial Court Cause No.
49G06-1504-F3-13909

**Bradford, Judge.**

## Case Summary

On April 17, 2015, Appellant-Defendant Jorge Lopez and his girlfriend, Jessica Mendoza, were involved in an episode of domestic violence. During this episode, their two-month-old son, J.M., was injured and suffered from a broken right femur or thigh bone. Lopez was subsequently charged with a number of offenses, including Level 3 felony battery resulting in serious bodily injury to a person less than fourteen years of age and Level 6 felony domestic battery. Following a jury trial, Lopez was found guilty of these offenses. The trial court subsequently sentenced Lopez to an aggregate term of thirteen years with eight of those years suspended to probation. Lopez challenges his Level 3 felony conviction on appeal, arguing that the trial court erred in including an instruction on transferred intent in its final instructions to the jury. We affirm.

## Facts and Procedural History

Shortly before 6 p.m. on April 17, 2015, Mendoza called 9-1-1 and reported that her boyfriend, Lopez, "put his hands on" her and shot her with a BB gun. State's Ex. 2. Mendoza also indicated that Lopez punched her in the mouth. Mendoza stated that Lopez would not let her take her son and that she "need[ed] somebody to get her son." State's Ex. 2.

Indianapolis Police Sergeant Tim Dowdy was dispatched to the address provided by Mendoza. When he arrived on the scene, Mendoza flagged him down. Mendoza "was very hysterical" and was saying, "Get my baby, Get my baby." Tr. pp. 54, 55. Sergeant Dowdy noticed round, red marks on

Mendoza's right forearm. Mendoza indicated to Sergeant Dowdy that Lopez had caused her injuries. Lopez was not at the scene at the time.

[4] Later that evening, Lopez took the couple's two-month-old son, J.M., to Eskenazi Hospital ("Eskenazi"). J.M. was transferred from Eskenazi to Riley Hospital for Children ("Riley"). After being evaluated in the emergency room at Riley, J.M. was diagnosed with a broken right femur or thigh bone. The fracture had occurred recently and was caused by "a force that twisted it and caused it to break." Tr. p. 99. This type of injury requires "substantial amount of force" and would have caused extreme pain. Tr. p. 109.

[5] On April 20, 2015, Indianapolis Police Detective Greg Norris interviewed Lopez. Lopez stated that Mendoza had hit him several times with a BB gun and that he had grabbed the gun from Mendoza and shot her four or five times. Lopez also provided several explanations as to how J.M.'s leg was broken. One explanation was that J.M. was injured when the B.B. gun "bounced" off of a bed and hit J.M. in the leg. State's Ex. 25, p. 19. Another was that J.M. was injured when Lopez dropped him in the shower. Finally, Lopez acknowledged that J.M. was injured when he "snatched" J.M. from Mendoza's arms. State's Ex. 25, p. 35.

[6] Lopez indicated that he "snatched" J.M. from Mendoza because he "was angry" and "pissed off" at the time after Mendoza threatened to "call the cops" and "leave with the baby." State's Ex. 25, p. 35. Lopez said that he "grabbed" J.M. by "the foot" and "tried to take him." State's Ex. 25, p. 35. Lopez further

stated that he grabbed J.M. by the leg and pulled him out of Mendoza's arms. Lopez acknowledged that J.M. was crying because he hurt him and admitted that J.M. was "really in pain" after he grabbed him. State's Ex. 25, p. 43.

[7]  On April 22, 2015, Appellee-Plaintiff the State of Indiana (the "State") charged Lopez with Count I – Level 3 felony battery resulting in serious bodily injury to a person less than fourteen years of age, Count II – Level 3 felony neglect of a dependent resulting in serious bodily injury, Count III – Level 6 felony domestic battery, Count IV – Level 6 felony domestic battery, Count V – Level 6 felony battery in the presence of a child, Count VI – Level 6 felony battery in the presence of a child, Count VII – Class B misdemeanor criminal recklessness, and Count VIII – Class B misdemeanor battery. The trial court conducted a two-day jury trial on November 30 and December 1, 2015. During trial, the parties agreed to the dismissal of Count VIII and that Count IV was a duplicate charge that should be removed from the jury's consideration.

[8]  Also during trial, the trial court determined that it was appropriate to give an instruction on transferred intent. Lopez objected to the instruction, arguing that there was no evidence that Lopez intended to harm Mendoza at the time he grabbed J.M. The trial court concluded differently, finding that the jury could infer that the domestic incident, during which the evidence suggests that Lopez intended to harm Mendoza, was ongoing when J.M. was injured. Following trial, the jury found Lopez guilty of Counts I, II, III, VI, and VII, but not guilty of Count V.

[9] The trial court conducted a sentencing hearing on January 15, 2016. During this hearing, the trial court entered judgment of conviction on Counts I and III and merged the remaining counts. The trial court then sentenced Lopez to an aggregate term of thirteen years with eight years suspended to probation. Noting the likelihood that Lopez would be deported as a result of his criminal convictions, the trial court included as a condition of Lopez's probation that Lopez must not enter the United States illegally. This appeal follows.

## Discussion and Decision

[10] In challenging his conviction for Level 3 felony battery resulting in serious bodily injury to a person less than fourteen years of age, Lopez contends that the trial court erred in instructing the jury.

> We review a trial court's decision on how to instruct a jury for abuse of discretion. *Forte v. State*, 759 N.E.2d 206, 209 (Ind. 2001). When evaluating the jury instructions on appeal this Court looks to whether the tendered instructions correctly state the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the proffered instruction is covered by other instructions. *Dye v. State*, 717 N.E.2d 5, 20 (Ind. 1999), *reh'g denied*. We will reverse a conviction only if the appellant demonstrates that the instruction error prejudices his substantial rights. *Hall v. State*, 769 N.E.2d 250, 254 (Ind. Ct. App. 2002).

*Treadway v. State*, 924 N.E.2d 621, 636 (Ind. 2010).

[11]     Lopez argues that the trial court abused its discretion by including Final Instruction #5, which defined the doctrine of transferred intent, in its final instructions to the jury. We need not decide whether the trial court abused its discretion in giving Final Instruction #5 to the jury on review, however, because Final Instruction #5 appears to relate only to Count II, which was merged into Count I by the trial court. Thus, any potential error in the giving of Final Instruction #5 would not likely have affected the outcome of Lopez's trial as the trial court did not enter judgment of conviction for Count II, only Count I. As such, we conclude that any error in including Final Instruction # 5 in the trial court's final instructions to the jury can, at most, be considered harmless. *See Sturgis v. State*, 654 N.E.2d 1150, 1153 (Ind. Ct. App. 1995) (providing that if an alleged error "might not have affected the outcome of the trial, such error is deemed harmless"), *trans. denied*.

[12]     With respect to Count I, Lopez was charged with Level 3 felony battery resulting in serious bodily injury to a person less than fourteen years of age. In order to prove Lopez committed this crime, the State was required to prove that Lopez, being at least eighteen years of age, knowingly or intentionally touched J.M., a person under the age of fourteen, in a rude, insolent, or angry manner and that the "touching" resulted in serious bodily injury to J.M. *See* Ind. Code § 35-42-2-1(b)(1) & (c)(i). The statute merely requires that Lopez knowingly or intentionally committed the "touching," not the bodily injury. *See generally Lowden v. State*, 51 N.E.3d 1220, 1223 (Ind. Ct. App. 2016) (noting that in *Maldonado-Morales v. State*, 985 N.E.2d 25, 28 (Ind. Ct. App. 2013), we

concluded that the required culpability of Indiana's battery statute applies only to the prohibited conduct, *i.e.* touching another in a rude, insolent, or angry manner). The evidence at trial demonstrates that Lopez intended to touch J.M. when he grabbed J.M. by the foot and pulled him from Mendoza's arms. The evidence is also sufficient to support an inference that Lopez committed this touching in a rude, insolent, or angry manner.

[13] The judgment of the trial court is affirmed.

Pyle, J., and Altice, J., concur.