## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 30 2019, 6:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bradley Keffer
Brooke Smith
Keffer Hirschauer LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Matthew B. MacKenzie
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jesse Lee Risley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 30, 2019

Court of Appeals Case No.
18A-CR-2707

Appeal from the
Vanderburgh Circuit Court

The Honorable
Kelli E. Fink, Magistrate

Trial Court Cause No.
82C01-1711-F3-6964

**Kirsch, Judge.**

[1] Jesse Lee Risley ("Risley") appeals his conviction for aggravated battery[1] as a Level 3 felony, raising the following restated issues:

    I.   Whether the trial court abused its discretion by giving a jury instruction about accomplice liability; and

    II.  Whether the State presented sufficient evidence to sustain Risley's conviction for aggravated battery as a Level 3 felony.

[2] We affirm.

## Facts and Procedural History

[3] On the night of September 23 and into the morning of September 24, 2017, Cody Utley ("Utley") and his girlfriend Kara Hale ("Hale") were drinking at a Vanderburgh County bar ("the Bar"). Risley and his friend, Jacob Humphrey ("Humphrey"), were also at the Bar that night. After getting a drink, Utley and Hale went outside to sit on the patio. The couple found a free table but noticed it had only one chair. Seeing a nearby table with three patrons and more than four free chairs, Utley began moving one of the chairs toward his table but was stopped by a woman. The woman, later identified as Heather Warfield ("Warfield"), "grabbed" the chair out of Utley's hand, "slammed it down," and pushed Utley. *Tr. Vol. II* at 73; *Tr. Vol. III* at 88. Patrons at another table offered Utley a chair. Utley took the chair back to his table and commented to

---

[1] *See* Ind. Code § 35-42-2-1.5.

Hale that Warfield's behavior was "cuntie." *Tr. Vol. II* at 73. Warfield, who worked as a server at the Bar, was socializing with friends after her shift and another server, Amanda Breeze ("Breeze"), was on duty. Having seen Warfield's behavior, Breeze went up to Warfield and told her "it was not okay to shove a patron." *Tr. Vol. III* at 87.

[4] Later, Breeze approached Utley, apologized to him for Warfield's behavior, and asked if there was anything she could do to help him. Utley responded by calling Breeze "a cunt." *Id.* at 89. Risley, who had walked up behind Breeze, could hear the conversation when Utley insulted Breeze. Breeze, unsure of what she had heard, asked Utley to repeat what he said; Utley repeated the insult. Breeze clarified that she was not Warfield, and Utley responded by telling her, "I don't care, you're still a cunt[.]" *Id.* at 119. During that exchange, Risley told Utley that he was going to "kick [Utley's] ass." *Tr. Vol. II* at 108, 137.

[5] Breeze ordered Utley to leave, and when Utley did not cooperate, Breeze asked the Bar's bouncer to escort Utley and Hale out. As the two were being escorted out of the Bar, Risley offered to pay for their cab fare. Utley, seeing that Risley's hair was in dreadlocks, made a comment about "[Risley's] hair and how bad it looked." *Tr. Vol. III* at 66. As Utley and Hale left through the patio gate, two men heckled them; Utley "heckled back." *Tr. Vol. II* at 138, 139.

[6] Once outside the patio gate, Utley called for a ride on his cell phone. Utley had taken only a few steps down the sidewalk when he heard a commotion behind

him.  Turning, Utley saw two men, later identified as Risley and Humphrey, coming toward him.  Risley testified that he "noticed that [Utley] had a knife in his hand and . . . felt [his] life was in danger." *Tr. Vol. III* at 210.  Risley and Humphrey knocked Utley to the ground, got on top of him, and hit Utley on the head repeatedly, stopping only when bouncers pulled the two men off.  The attack lasted about a minute.  Utley testified that, during the assault, everything "went black." *Id*. at 77-78.  From a photo line-up, both Hale and Utley identified Risley as one of Utley's attackers. *Id.* at 165-67.  From a second photo line-up, Hale was also able to identify Humphrey as the other attacker. *Id*. at 167.  A witness named Murray Wilson. Jr. ("Murray") observed the attack and called 911.  Wilson urged the 911 operator to send an ambulance because Utley was "bleeding pretty good." *Tr. Vol. II* at 62.

[7]     After being pulled off of Utley, Risley went back inside the Bar.  Risley told Breeze that he had "knocked [Utley] out" and needed to leave, saying, "nobody talks to a woman that way." *Tr. Vol. III* at 93.  Around that time, Utley opened his eyes and discovered that a bouncer had attempted to help him stand and was holding a rag to his bloody head.  Utley stated, "[A]fter the hit, it took a little bit to see." *Tr. Vol. II* at 78.  As Utley was trying to get up, but before he could get to his feet, Breeze jumped on him and started hitting him.  Breeze repeatedly hit Utley; witnesses testified that Breeze hit Utley with an open hand.  Risley went inside the Bar and told another bouncer that Utley needed help.  Risley then went to his car and drove home. *Tr. Vol. III* at 212.  The next

thing Utley remembered was speaking with a police officer and seeing an ambulance. *Tr. Vol. II* at 80.

[8] By this time, Evansville Police Department Officer Michael Evans ("Officer Evans") responded to a dispatch and arrived at the scene. Officer Evans saw Utley in a seated position, and a woman, later identified as Breeze, "standing over him." *Tr. Vol. III* at 24. At trial, Officer Evans testified that he heard what he thought was a slap, and, when he looked up, he saw Breeze slapping Utley. *Id.* at 24-25. Breeze was not wearing any rings. Utley testified that he "felt like [he] wasn't getting super hard hit" by Breeze. *Tr. Vol. II* at 88.

[9] Meanwhile Officer Nicholas Cassin ("Officer Cassin") also had arrived at the scene and observed "several dozen big blotches of blood." *Tr. Vol. III* at 134-35. Officer Cassin followed the trail of blood until he found Utley. *Id.* at 135. Officer Cassin then asked the bouncer and Hale what happened. Hale said that Utley was the victim of battery. *Id.* at 136. Noting the amount of blood that Utley had lost, Hale insisted that an ambulance be called. *Id.* While awaiting the ambulance, the bouncer and Hale attended to Utley, and the police officers continued their investigation.

[10] The police officers recognized that Utley was hurt; however, they misjudged the extent of his injuries and thus did not believe the injuries created a "health emergency." *Id.* at 153. When the officers first encountered Utley, he mumbled and was incoherent, behavior the officers believed was the result of intoxication. When the ambulance arrived, Utley initially refused to go to the

hospital and was reluctant to press charges. However, the emergency responders determined that Utley lacked balance and was unsure about "person, place, time, and situation" and required Utley to go to the hospital. *Id*. at 155. Utley was diagnosed as having a depressed skull fracture. *Tr. Vol. II* at 26-27.

[11] Utley spent three or four days in the hospital's intensive care unit and went to a rehabilitation center to recover. During his recovery, Utley missed nine weeks of work, and his medical issues resulted in Utley losing his driver's license. Utley also had difficulty speaking; he could not say the days of the week or recite the alphabet and two-syllable words were challenging to say. On November 9, 2017, the State charged Risley with aggravated battery resulting in an injury causing "protracted loss or impairment of the function of a bodily member or organ," a Level 3 felony. Ind. Code § 35-42-2-1.5. Upon learning there was a warrant for his arrest, Risley turned himself in.

[12] On February 7, 2018, while Utley was at work at Toyota, he had a seizure. Utley was on his lunch break, and he was talking to Hale using Facetime. Without understanding how he got there, Utley found himself "walking into the offline where all the vehicles go to get repaired and then everybody was looking at [him]." *Tr. Vol. II* at 84. Utley asked his co-workers why they were looking at him. Utley's fellow workers sat him down and called an ambulance. Utley had no memory of what happened in the intervening period. *Id*.

[13]     A jury trial began on September 12, 2018.[2]  By the time of trial, Utley knew that he had suffered a depressed skull fracture at the Bar when he was attacked and hit in the head.  *Id.* at 26-27, 93-94.  Utley's head injury damaged the brain tissue and caused many types of bleeding in and around the brain.  *Id.* at 27.  Specifically, there was "bleeding between the layers of skin that surround the brain, . . . called a subdural hematoma, and there was bleeding around the vessels inside the brain, . . . called subarachnoid hemorrhage, and then there was bleeding inside the brain tissue itself, . . . call[ed] an intracerebral hemorrhage."  *Id.*  Utley's injury had left him at "a significant risk for a recurrent seizure."  *Id.* at 26.  As such, Utley understood that he would need to take anti-seizure medication for the rest of his life.  *Id.* at 29, 84.

[14]     During the trial, the parties discussed the proposed final instructions in chambers.  Risley's counsel objected to the State's proposed instruction on accomplice liability, specifically stating, "[T]here's no evidence whatsoever that [Risley] aided or abetted anyone, if he committed a crime it was his own crime and he should stand to answer for that."  *Tr. Vol. III* at 238.  The State responded, saying, by "the defendant's own words, he was there with Jacob Humphrey and they were hitting the defendant together, so my reading under the law, it wouldn't matter which one of them actually hit him causing his skull to fracture, the fact that they were pummeling him together, that's enough for

---

[2] Before trial, the State filed a motion to consolidate and join Risley's case with Humphrey's case; Risley filed an objection.  In June 2018, the trial court denied the State's motion.  *Appellant's App. Vol. 2* at 8-9, 10.

the aiding, inducing, or causing instruction." *Id*. at 239. The trial court agreed with the State and instructed the jury on the theory of accomplice liability.

[15] Following deliberation, the jury found Risley guilty as charged, and the trial court sentenced him to twelve years, ordering six years executed at the Indiana Department of Correction, three years executed at Therapeutic Work Release, and three years suspended to the Drug Abuse Probation Services Program. *Tr. Vol. V* at 76. Risley now appeals his conviction.

# Discussion and Decision

## I. Jury Instruction

[16] Risley contends that the trial court abused its discretion when, over his objection, it gave a jury instruction on accomplice liability. Before closing statements, and outside the presence of the jury, the parties discussed the proposed final jury instructions. *Tr. Vol. III* at 238. The State submitted an accomplice liability instruction,[3] and defense counsel objected, arguing, "[T]here's no evidence whatsoever that [Risley] aided or abetted anyone, if he committed a crime it was his own crime, and he should stand to answer for that." *Id.* at 238; *Appellant's App. Vol. 2* at 114-16. In support, defense counsel

---

[3] The State proposed three instructions; however, only the aiding and abetting instruction is at issue in this appeal.

cited to testimony of both Breeze and Humphrey, who claimed that they had acted independently from Risley.  *Tr. Vol. III* at 238-39.

[17]     The State countered that Risley himself admitted "he was there with Jacob Humphrey and they were hitting the defendant together."  *Id*. at 210-11, 239. The State argued that "under the law, it wouldn't matter which one of them actually hit [Utley] causing his skull to fracture, the fact that they were pummeling [Utley] together, that's enough for the aiding, inducing, or causing instruction."  *Id*. at 239.  After considering the parties' arguments, the trial court found it appropriate to give the accomplice instruction and gave a modified version of the State's tendered instruction as Final Instruction Number 8 ("Instruction 8").  Instruction 8 provided:

> Aiding, inducing or causing an offense is defined by law as follows:
>
> A person who, knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense.  A person may be convicted of aiding, inducing, or causing an offense even if the other person has not been prosecuted for the offense, has not been convicted of the offense, or has been acquitted of the offense.

*Appellant's App. Vol. 2* at 133.  Because part of defense counsel's theory was that Risley was defending himself from Utley's knife, the trial court also instructed the jury with the pattern jury instruction for self-defense.  *Tr. Vol. III* at 14, 240.

"Generally, '[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" *Hahn v. State*, 67 N.E.3d 1071, 1084 (Ind. Ct. App. 2016) (quoting *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003), *cert. denied*, 540 U.S. 1150 (2004)), *trans. denied*. Instructing the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. *Id*. "To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury." *Id*. "Before a defendant is entitled to a reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights." *Id*. An error is deemed to be harmless unless it affects the substantial rights of a party. *Id*. at 1084-85.

Risley concedes that he joined with Humphrey in the attack, yet, contends that he was not an accomplice because there is no evidence that he caused the injury that supports the Level 3 felony conviction. *Appellant's Br*. at 10-11; *Tr. Vol. III* at 210-11. Indiana's accomplice-liability statute provides, in part, "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]" Ind. Code § 35-41-2-4. "Under this statute, an individual who aids another person in committing a crime is as guilty as the actual perpetrator." *Schaaf v. State*, 54 N.E.3d 1041, 1043 (Ind. Ct. App. 2016).

> Therefore[,] it is not necessary that the evidence show the accomplice personally participated in the commission of each element of the offense. [T]he acts of one accomplice are imputed to all. So long as the State shows that one participated in the commission of an offense as an accomplice, the accomplice "is criminally responsible for everything [that] follows incidentally in the execution of the common design, as one of its natural and probable consequences, even though it was not intended as part of the original design or common plan.

*Griffin v. State*, 16 N.E.3d 997, 1003 (Ind. Ct. App. 2014) (citations and quotations omitted).

[20] "Our Supreme Court has identified four factors that can be considered by the fact-finder in determining whether a defendant aided another in the commission of a crime: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime." *Id*. (citing *Wieland v. State,* 736 N.E.2d 1198, 1202 (Ind. 2000)). The parties agree that on the night in question: (1) Utley, Hale, Humphrey, and Risley were at the Bar around the same time,; (2) Utley insulted Breeze, Warfield, and Risley; (3) at Breeze's request, a bouncer ushered Utley and Hale out of the Bar; (4) while leaving the Bar, Utley heard a commotion behind him; (5) turning, Utley saw two men, later identified as Risley and Humphrey, running toward him; and (6) Risley and Humphrey knocked Utley to the ground, got on top of him, and hit him on the head repeatedly for about one

minute. *Appellant's Br.* at 7-8; *Appellee's Br.* at 7-8. Utley testified that during Risley and Humphrey's assault, everything "went black." *Tr. Vol. II* at 77-78.

[21] Risley and Humphrey both attacked Utley at the same time, and Risley told Breeze that he had "knocked [Utley] out." *Tr. Vol. II* at 26-27, 77-78, 82, 85-86, 93-94, 227; *Tr. Vol. III* at 93-94, 167. Risley and Humphrey had been friends since high school and continued to "hang out" together, and it was reasonable to infer that their joint attack on Utley reflected a common purpose. *Tr. Vol. III* at 205. There is no evidence that either Risley or Humphrey made any attempt to stop the other's actions during the one-minute joint attack. *Tr. Vol. II* at 227. Finally, Risley and Humphrey repeatedly hit Utley in the head, suggesting that they both intended to hurt Utley. *Id*. Regardless of who delivered the hardest blow, both men were involved in the action of attacking Utley, and both were responsible for any consequence that followed. We find more than adequate evidence for the giving of an accomplice liability instruction; the trial court did not abuse its discretion.

## II. Sufficiency of the Evidence

[22] Risley next contends that the evidence was insufficient to sustain his conviction for aggravated battery resulting in impairment of a bodily function, as a Level 3 felony. When reviewing sufficiency of the evidence claims, we do not reweigh the evidence or judge the credibility of the witnesses. *Ericksen v. State*, 68 N.E.3d 597, 600 (Ind. Ct. App. 2017), *trans. denied*. "We view all evidence and reasonable inferences drawn therefrom in a light most favorable to the

conviction and will affirm 'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (quoting *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004)).

[23] To convict Risley of aggravated battery as a Level 3 felony, the State had to prove beyond a reasonable doubt that: (1) Risley knowingly or intentionally inflicted injury on Utley; and (2) the injury caused protracted loss or impairment of the function of a bodily member or organ. Ind. Code § 35-42-2-1.5. Risley admitted that he and Humphrey attacked Utley and hit him on the head. *Tr. Vol. III* at 210-11. After the attack, Utley "went black." *Tr. Vol. II* at 149. Thereafter, he mumbled and was incoherent. *Tr. Vol. III* at 154. The officers believed that Utley's actions were the result of intoxication. However, the emergency responders determined that Utley lacked balance and was unsure about "person, place, time, and situation" and required Utley to go to the hospital. *Id*. at 155. Utley was diagnosed as having a depressed skull fracture. *Tr. Vol. II* at 26-27. Doctor Jason Meckler ("Dr. Meckler"), the neural hospitalist who treated Utley in February 2018 after Utley had his seizure at work, was familiar with the medical records from Utley's treatment following his injury on the night of September 23, 2017. *Id*. at 22-23, 30. Dr. Meckler testified that Utley's condition was a result of the injury he sustained on the

night of the September 2017 attack. *Id*. at 26. This evidence satisfies the first element.[4]

[24] Regarding the second element, it is clear that the attack by Risley and Humphrey caused Utley to suffer protracted loss or impairment of the function of a bodily member or organ. The attack damaged Utley's brain tissue and caused many types of bleeding in and around the brain. *Tr. Vol. II* at 27. Specifically, there was "bleeding between the layers of skin that surround the brain, . . . called a subdural hematoma, and there was bleeding around the vessels inside the brain, . . . called subarachnoid hemorrhage, and then there was bleeding inside the brain tissue itself, . . . call[ed] an intracerebral hemorrhage." *Id*. The treatment for the depressed skull fracture required Utley to spend three or four days in the intensive care unit; Utley also had to go to a rehabilitation center. *Tr. Vol. II* at 82-83. During his recovery, Utley missed nine weeks of work, and his medical issues resulted in Utley losing his driver's license. *Id*. at 83. Utley also had difficulty speaking; he could not say the days of the week or recite the alphabet and two-syllable words were challenging to say. *Id*. Furthermore, Dr. Meckler testified that Utley will suffer from a lifelong risk of recurring seizures due to the damage to his brain. *Id.* at 26-27.

---

[4] One of defense counsel's theories at trial was that Risley was not culpable for Utley's injury because Risley was reacting to Utley holding a knife, and, therefore, Risley acted in self-defense when he attacked Utley. The jury was given a self-defense instruction but, by finding Risley guilty, the jury clearly rejected that defense. On appeal, Risley does not contest the form or substance of the self-defense instruction.

As such, Utley had to take anti-seizure medication for the rest of his life. *Id*. at 29, 84.

[25] While Risley argues that he did not intend to inflict injury that caused protracted loss or impairment of the function of a bodily member or organ, our court has held, "[T]he severity of the injury is not an element of the prohibited conduct, but a result of it." *Lowden v. State*, 51 N.E.3d 1220, 1223 (Ind. Ct. App. 2016), *trans. denied*. Accordingly, the State was required to prove only that Risley "knowingly or intentionally inflicted injury" upon Utley and not that Risley knew he would cause impairment to a bodily function or organ. *Id.* A jury could reasonably conclude from these facts that Risley was guilty of Level 3 felony aggravated battery.

[26] Affirmed.

Vaidik, C.J., and Altice, J., concur.