## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 11 2020, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Hanson
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Willie L. Vertison,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | February 11, 2020<br><br>Court of Appeals Case No.<br>19A-CR-947<br><br>Appeal from the Allen Superior Court<br><br>The Honorable David M. Zent, Judge<br><br>Trial Court Cause No.<br>02D06-1710-F3-60 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Willie Vertison was convicted of aggravated battery, a Level 3 felony, and sentenced to serve fifteen years in the Indiana Department of Correction ("DOC"). Vertison appeals and raises one issue for our review, namely whether the evidence was sufficient to support his conviction. Concluding the State presented sufficient evidence to support Vertison's aggravated battery conviction, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdict are as follows. Videl Peaches and Vertison are cousins. On April 16, 2017, Vertison was staying with Videl's mother in Fort Wayne. That evening, Videl and his wife, Jennifer, picked Vertison up and went back to their apartment to hang out. At the time, Lois, the mother of one of Videl's friends, was staying at the apartment with Videl and Jennifer. A.M., the minor daughter of Jennifer's best friend, was close with Jennifer and frequently spent time with Jennifer at the apartment; the two had gone to the salon earlier in the day and A.M. planned to hang out at the apartment that evening.

[3] Videl, Vertison, Jennifer, and Lois hung out at the apartment for a while. Around 8:00 p.m., the four of them went out to drink[1]; they visited Videl's

---

[1] Jennifer does not drink but accompanied the group that night.

friend's home, then stopped by a bar, and then went by another cousin's barber shop. Later that night, the group returned to the apartment and continued to talk, listen to music, and drink. As the others hung out, A.M. was in Jennifer's bedroom texting her boyfriend.

[4] Vertison stated that his cell phone was missing and accused all of the others of stealing it. Vertison was intoxicated and began "acting a little off, . . . he was argumentative, [and] being disrespectful toward everybody." Transcript, Volume 1 at 159. Videl asked Vertison to stop several times and then asked him to leave the apartment, which only caused Vertison to become even more argumentative. As Vertison and Videl argued, Jennifer went into another room. Videl got up and walked toward the door to escort Vertison out. As Videl went to open the door, "all hell broke loose." *Id.* at 144. Vertison attacked Videl with a knife. The two began wrestling and Videl attempted to push the knife away. Jennifer could hear Lois "screaming and yelling at [Vertison]," and walked into the room where Lois was trying to break up the fight. *Id.* at 161. A.M. heard "some ruckus" from the bedroom. *Id.* at 134. As A.M. walked out of the bedroom, she witnessed Vertison stab Videl in the stomach with a knife at least twice. Lois was able to successfully push Vertison out the door and he left.

[5] The police were called and around 4:00 a.m., officers arrived on scene and found Videl in a bathroom incoherent and covered in blood. Officer Daniel Hartman of the Fort Wayne Police Department spoke with Jennifer, Lois, and A.M. Jennifer indicated that Vertison was the individual who stabbed Videl.

Officer Hartman relayed this information through dispatch and roughly twenty to twenty-five minutes later, officers apprehended Vertison.

[6] When paramedics arrived, Videl had lost a significant amount of blood and was in critical condition; Vertison had stabbed him twelve times. Videl was transported to Lutheran Hospital where he stayed through the end of July. During his stay, Videl underwent fifteen to twenty procedures and surgeries and actively died six times[2] but ultimately survived. On October 25, 2017, the State charged Vertison with aggravated battery, a Level 3 felony, and a jury trial was held on February 5 and 6, 2019. The jury found Vertison guilty as charged and the trial court sentenced Vertison to fifteen years in the DOC. Vertison now appeals.[3]

# Discussion and Decision

## I. Standard of Review

[7] Our standard of reviewing a sufficiency claim is well-settled. *Brent v. State*, 957 N.E.2d 648, 649 (Ind. Ct. App. 2011), *trans. denied*. We do not reweigh the evidence or assess the credibility of the witnesses. *Purvis v. State*, 87 N.E.3d

---

[2] Dr. Pradeesh George, a trauma surgeon at Lutheran Hospital who treated Videl, testified that this "means that he had at least six (6) times during the hospital stay for his heart to stop, and then we had to actively work to get his heart back[.]" Tr., Vol. 2 at 9.

[3] Appellant's Statement of Facts is not in narrative form but merely a recitation of each witnesses' testimony, in violation of Indiana Appellate Rule 46(A)(6)(c), which explicitly requires a party's Statement of the Facts contained in his or her appellate brief to be in *narrative form*, not "a witness by witness summary of the testimony." We take this opportunity to strongly encourage counsel to comply with this rule in future cases.

1119, 1124 (Ind. Ct. App. 2017). Instead, we consider only the evidence most favorable to the verdict and the reasonable inferences supporting it. *Id.* Therefore, it is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). "[W]e will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt." *Id.*

## II. Sufficiency of the Evidence

[8] Vertison challenges the sufficiency of the evidence supporting his conviction for aggravated battery. Indiana Code section 35-42-2-1.5 provides:

> A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes:
>
> (1) serious permanent disfigurement;
>
> (2) protracted loss or impairment of the function of a bodily member or organ; or
>
> (3) the loss of a fetus;
>
> commits aggravated battery, a Level 3 felony.

[9] The State alleged that Vertison knowingly or intentionally inflicted an injury on a person that created a substantial risk of death. *See* [Confidential] Appendix to Appellant's Brief, Volume 2 at 2. Therefore, to convict Vertison of aggravated battery, a Level 3 felony, the State had to prove beyond a reasonable doubt that:

(1) Vertison; (2) knowingly or intentionally; (3) inflicted injury on Videl; and (4) that injury created a substantial risk of death. Ind. Code § 35-42-2-1.5; Ind. Code 35-41-4-1(a) ("A person may be convicted of an offense only if his guilt is proved beyond a reasonable doubt."). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so. A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(a)-(b).

[10] Vertison concedes that the injury suffered by Videl created a substantial risk of death. However, Vertison contends that aggravated battery is a specific intent crime rather than a general intent crime. "Specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. General criminal intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of a subjective desire to have accomplished such result." *Hooker v. State*, 180 Ind.App. 222, 229 n.1, 387 N.E.2d 1354, 1358 n.1 (1979).[4]

[11] Vertison maintains that the mens rea element of aggravated battery is akin to the intent element of an inchoate offense, which is defined as "[a] step toward the commission of another crime, the step in itself being serious enough to merit

---

[4] The adoption of the 1977 Indiana Penal Code codified the various degrees of mens rea required for the commission of the crime. *Id.*; *see also* Ind. Code § 35-41-2-2.

punishment. The three inchoate offenses are attempt, conspiracy, and solicitation." Black's Law Dictionary (11th ed. 2019). In support of his argument, Vertison provides the example of attempted murder, which requires the State to prove the defendant acted with the specific intent to kill and took a substantial step toward the commission of the crime. *See Spradlin v. State*, 569 N.E.2d 948, 949 (Ind. 1991); *see also* Ind. Code § 35-41-5-1(a). Therefore, in essence, he argues that because aggravated battery is a specific intent crime, the mens rea – knowing or intentional culpability –applies both to the act and to the inflicted injury element of the crime. We disagree and conclude that Vertison's argument is contrary to our caselaw.

[12] First, with respect to Vertison's argument that the intent element of aggravated battery is akin to the intent element of attempted murder, Vertison acknowledges that aggravated battery is *not* an inchoate offense thus undercutting his own argument. *See* Appellant's Brief at 42. Moreover, our supreme court has expressly limited the specific intent element in *Spradlin* not just to attempt crimes but specifically to attempted murder. *Richeson v. State*, 704 N.E.2d 1008, 1009-11 (Ind. 1998).

[13] Second, this court has already rejected Vertison's very position and held that the mens rea *does not* apply to the severity of the injury under the aggravated battery statute. *Lowden v. State*, 51 N.E.3d 1220, 1223 (Ind. Ct. App. 2016), *trans. denied*. Instead, this court concluded that "[t]he culpability requirement applies to the conduct prohibited by the statute, not to the result of that conduct. The prohibited conduct in the aggravated-battery statute is to *inflict*

*injury on another.*"  *Id*. (emphasis added) (citation and quotation omitted). Furthermore, the severity of the injury is not an element of the prohibited conduct, but a result of it.  *Id*.  Accordingly, the State was required to prove only that Vertison knowingly or intentionally inflicted injury upon Videl and not that Vertison knew he would create a substantial risk of death.  *See id*.  And a jury could reasonably conclude from these facts that Vertison knowingly or intentionally inflicted injury on Videl by stabbing him twelve times with a knife and therefore, was guilty of Level 3 felony aggravated battery.[5]

## Conclusion

We conclude the evidence is sufficient to sustain Vertison's conviction for aggravated battery, a Level 3 felony.  Accordingly, we affirm.

Affirmed.

Bradford, C.J., and Altice, J., concur.

---

[5] Vertison also argues the trial court improperly instructed the jury on the intent element of aggravated battery and his state of intoxication undermines any intent under the statute.  *See* Appellant's Br. at 37-41, 43-44.  The validity of these arguments hinges on our acceptance of Vertison's underlying argument that the intent element applies to the resulting injury, which as discussed above is contrary to our caselaw.  Additionally, we note that Vertison failed to object to the trial court's preliminary or final jury instructions; therefore, he has waived appellate review of any alleged error and he does not argue fundamental error. *Brown v. State*, 691 N.E.2d 438, 444 (Ind. 1998); Tr., Vol. 1 at 5, 118; Tr., Vol. 2 at 97, 112.  Waiver notwithstanding, having concluded the intent element does not apply to the inflicted injury, Vertison's remaining arguments fail.  *See Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016) (in reviewing a trial court's decision to give or refuse a tendered jury instruction, appellate courts consider (among other things) whether the instruction correctly states the law); *see also* Ind. Code § 35-41-3-5 (intoxication is a defense only where the person engaged in prohibited conduct while he was intoxicated and his intoxication was the result of the introduction of a substance into his body without consent or when he lacked knowledge that the substance might cause intoxication).